## In re ABBRUZZO.

(District Court, W. D. Pennsylvania. June 20, 1921.)

No. 9134.

Bankruptcy ⇐191 (1)—Distraint by landlord not dissolved by bankruptcy "obtained through legal proceeding."

A landlord's lien is not one "obtained through legal proceedings" within the meaning of Bankr. Act, § 67f (Comp. St. § 9651), but is recognized by the common law and the law of Pennsylvania as arising out of the

⇐For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

relation of landlord and tenant, and the lien acquired by a distraint for rent is not affected by bankruptcy of the tenant within four months.

In Bankruptcy. In the matter of Louis A. Abbruzzo, bankrupt. On review of order of referee. Reversed.

M. B. Lesher, of Pittsburgh, Pa., for creditors.

Linus P. McGuiness, of Pittsburgh, Pa., for bankrupt.

THOMSON, District Judge. This case comes before us on a certificate from the referee. Louis Abbruzzo, being a tenant of an office in the Park Building, Pittsburgh, and being indebted for six months' rent under his lease, amounting to $308, the landlord issued a warrant on December 21, 1918, under which the office furnishment was levied on and advertised for sale. Six days later, a creditors' petition was filed against the tenant, a receiver was appointed by the court, on the application of the receiver a restraining order issued against the landlord, and on February 19th the tenant was adjudged a bankrupt. On April 8, 1919, on petition of the receiver, the goods levied on under the landlord's warrant were sold at private sale for $300, the court confirmed the same, and ordered:

"That the said fund be substituted for the furniture and fixtures until the court shall have determined the validity of the lien, without prejudice to the rights of the said landlord therein."

The receiver, who was subsequently appointed trustee, filed his account, claiming $57.20 as expenses of administration, including his commissions and attorney's fees, and claimed in his trustee's account $16.50 expenses. The landlord objected to the allowance of any expenses, commissions, or attorney's fees, on the ground that he is entitled to have his rent paid in full. The learned referee overruled the objection, except as to an item of $5 attorney's fee in the trustee's account, and ascertained the amount due to the landlord to be $231.30. The correctness of this ruling is the matter certified.

The question involved is of much greater importance than the amount in controversy, and requires a discriminating application of certain established legal principles. The learned referee considered as controlling section 64b of the Bankruptcy Act (Comp. St. § 9648), which specifies the debts which have priority, and the order of payment. In this section, costs of administration and attorney's fees are placed third; wages due workmen, and so forth, fourth; and "debts owing to any person who by the laws of the states or the United States is entitled to priority" are fifth in the order of priority. Under this fixed statutory rule of distribution, the referee concluded that the costs of administration must be first paid. This section must be read in connection with other sections of the act, in order to correctly apply it.

Section 67f provides as follows:

"All levies, judgments, attachments, or other liens, obtained through legal proceedings against a person who is insolvent, at any time within four months prior to the filing of a petition in bankruptcy against him, shall be deemed null and void in case he is adjudged a bankrupt, and the property affected by

the levy, judgment, attachment, or other lien shall be deemed wholly discharged and released from the same, and shall pass to the trustee as a part of the estate of the bankrupt." Comp. St. § 9651.

This section strikes down preferences of all levies, judgments, attachments, or other liens, obtained through legal proceedings against an insolvent within four months prior to the filing of a petition in bankruptcy against him. On the other hand, the Bankrupt Act preserves and gives effect to all the priorities which are not preferential or in fraud of the act, and which are recognized by the several states.

The question then arises, what is the nature of a landlord's claim, and on what is it based? Distress for rent is a most ancient and efficient remedy to the landlord for the collection of rent. It belonged to him at common law, and in most states its exercise is regulated by statute. In this state, as at common law, a warrant is issued directly by the landlord, and he to whom it is directed, whether officer or private citizen, is bailiff or agent of the landlord. The right of distraint arises when the relation of landlord and tenant is created, and is in the nature of a lien. For the assertion of this right no suit is necessary. It is independent of legal proceedings, as no return is made, no judicial hearing had, or judgment obtained, in order to authorize the landlord to sell. While there is no specific lien except on the goods actually distrained, all the goods on the premises are treated as a quasi pledge, which gives superiority to the specific lien established by the distraint. It is in no sense "obtained through legal proceedings." The priority given under the levy of the distress warrant arises under the law from the relation of landlord and tenant, the warrant being in the nature of an execution or process for the enforcement of the existing right. Such lien is not discharged under the provisions of section 67f of the Bankrupt Act, and therefore the priorities in distribution provided for in section 64b do not apply. These principles which I have summarized are most clearly set forth in the able opinion of Judge Gray, of the Circuit Court of Appeals for this circuit, in Re West Side Paper Co., 162 Fed. 110, 89 C. C. A. 110, 15 Ann. Cas. 384. They are also elaborated by the Supreme Court of the United States in Henderson v. Mayer, 225 U. S. 631, 32 Sup. Ct. 699, 56 L. Ed. 1233, in which the opinion of Judge Gray in Re West Side Paper Co. is more than once referred to with approval.

The foregoing principles are so plainly enunciated and so clearly and convincingly stated in these cases as to leave no room for doubt as to their correctness. The learned referee in his opinion draws a distinction between the case at bar and that in Re West Side Paper Co., but I am of opinion that no such distinction is justified. The goods which were sold in that case were the goods of the bankrupt, who was a subtenant of the lessee, although not recognized by the landlord as his tenant. But the goods were on the leased premises, and therefore subject to the landlord's distress, by virtue of his right arising under the tenancy created by his lease. Under those circumstances, the goods having sold for less than the amount of the landlord's rent, the Circuit Court of Appeals held, reversing the District Court, that the landlord was entitled to payment in full of his rent,

undiminished by the costs of administration. This is absolutely controlling of the case at bar. The goods, being on the premises and liable for distress, under the Pennsylvania statute are preferred to the extent of one year's rent, as against an execution or other process by which they may be seized and sold.

It follows that the report and order of the learned referee must be reversed, and the whole fund is awarded to the landlord, except the actual costs of making the sale.