In re Henry BAVITZ and Viola Bavitz, i/t/a Bavitz Colonial Lanes a/k/a Bavitz Bowling Lanes, Debtors.

AMF, INCORPORATED, Plaintiff,

v.

Henry Adam BAVITZ and Viola Bavitz, i/t/a Bavitz Colonial Lanes a/k/a Bavitz Bowling Lanes and John J. Thomas, Trustee and Bernard Stesney and Helen ·Stesney i/t/a Colonial Lanes, Defendants.

Bankruptcy No. 5–81–00220.
Adv. No. 5–81–0390.

United States Bankruptcy Court, M.D. Pennsylvania.

June 29, 1982.

Robert N. Opel, II and Ronald V. Santora, Wilkes-Barre, Pa., for plaintiff.

Gifford R. Cappellini, Wilkes-Barre, Pa., for debtor.

John J. Thomas, Wilkes-Barre, Pa., Trustee.

John H. Doran, Wilkes-Barre, Pa., for Stesney.

OPINION AND ORDER

THOMAS C. GIBBONS, Bankruptcy Judge:

AMF, Incorporated (AMF), commenced this adversary proceeding following the debtors' filing of a petition for relief under Chapter 7 of the Bankruptcy Code. In this action AMF seeks possession of bowling lanes and equipment which it leased to the debtors prior to the commencement of bankruptcy.

AMF leased eight bowling lanes to the debtors in 1969. The lease between AMF and the debtors provided that the lanes "shall at all times remain the sole and exclusive property of AMF ... and Operator shall have no right, title or interest to the machines but only the right to use them under this Agreement.... Operator shall not transfer, deliver, sublease or encumber the machines to any other person, corporation or firm...." The lanes were annexed to the debtors' place of business, a leasehold located at 438 East Main Street, Nanticoke, Pennsylvania. Prior to annexation the debtors received from the lessor of the real property a waiver of his interest in the fixtures. In August or September of 1979, the debtors removed the lanes from the East Main Street property in violation of the debtors' lease with AMF. The debtors promptly annexed the equipment to another property they subsequently leased in the Colonial Village Shopping Center, Nanticoke, Pennsylvania. The lessor of the shopping center subsequently sold the center to

the Stesneys, defendants in this action. Due to the debtors' failure to pay current rentals on the bowling equipment, AMF declared the equipment lease in default and demanded the return of the lanes in November of 1980. The debtors refused to deliver the equipment notwithstanding the notice of default. Shortly after the default with AMF the debtors defaulted on the lease with the Stesneys and apparently abandoned the premises and the bowling equipment. The Stesneys have continued to use the bowling lanes since they first came into possession of them. They have not paid any rental to AMF for the use of the lanes; consequently, the Stesneys have accrued rental indebtedness on the lanes in the amount of $9,600.00. The debtors filed for relief under the Bankruptcy Code on March 20, 1981. The instant adversarial proceeding was commenced against the Stesneys, the debtors and trustee on September 11, 1981. For their failure to defend against this action, default judgment was entered against the debtors and the trustee.

The plaintiff asserts it is the owner of the bowling equipment and has paramount rights to possession of such equipment. In defense of AMF's request for relief the Stesneys contend that AMF's failure to secure a waiver of their interest in the bowling lanes gives them full ownership rights since the lanes are fixtures on the Stesneys' realty. Due to the breach of the lease between the Stesneys and the debtors, the Stesneys also contend that the bowling equipment is rightfully theirs since that lease provides that any property remaining on the premises after the termination of the lease is deemed abandoned and becomes property of the landlord. The Stesneys lastly contend that they are entitled to satisfaction of their claim for back rent against the debtors upon the sale of the bowling lanes due to Pa.Stat.Ann. tit. 39, § 96 (Purdon). The Stesneys assert that this statute gives them a priority claim over general unsecured creditors in the proceeds from a sale of the bowling equipment.

The plaintiff asserts it is the owner of the bowling equipment and is entitled to immediate possession. AMF's prima facie claim of ownership is sound. It is uncontested that the lanes were the property of AMF prior to 1969, when the lanes were leased to the debtors. The lease granting the debtors the right to use the equipment clearly indicated that AMF remained the exclusive owner of the lanes while the debtors gained nothing but the bare right of use and possession of the lanes. The lease also provided that the debtors could not unilaterally grant their rights of use and possession to another party. The Stesneys claim that the debtors were able to convey to them greater rights in the property than they possessed but, in fact, their claim to possession is subject to all the limitations that bound their predecessors in possession, the debtors. Therefore, since the debtors were not entitled to the use and possession of the lanes following the default of the equipment lease, the Stesneys are likewise not now entitled to use or possession.

Clearly this result is not inequitable. The Stesneys are merely barred from retaining possession of property which they did not purchase or fairly obtain. Even if the Stesneys had *purchased* the lanes and annexed them to their realty we would be obligated to reach the same result since the debtors' actions in parting with the equipment without AMF's consent could not divest AMF of title in the property. This would be another application of the principle which enables an owner to recover his stolen property even though it is sold by the thief to an innocent purchaser; the theft and subsequent sale do not divest the owner of his title to the property. The innocent purchaser's remedy lies against the wrongdoer. In the instant case the Stesneys, as transferees of the property, bore the risk that the debtors did not have good title to transfer to them.

The Stesneys defend against the plaintiff's action to regain possession of the bowling equipment by asserting that AMF's failure to secure a waiver of their interest in the bowling equipment gives them full ownership rights since the lanes are fixtures on their realty. In essence, the Stes-

neys are arguing that AMF's ownership rights in the equipment were extinguished due to the debtors' wrongful removal of the equipment from the Main Street leasehold and subsequent wrongful annexation to the shopping center leasehold. The equipment lease with AMF clearly provided that title to the equipment remained in AMF and that the debtors were forbidden to remove the lanes from the Main Street address. On facts virtually identical to those of the instant case it has been held that the wrongful removal and re-annexation of fixtures to another parcel of realty did not terminate the rights of the lawful owner in the fixtures. *In Re Pfeiffer Corporation*, 15 F.Supp. 618 (M.D.Pa.1936); *Burpee v. Athens Production Credit Association*, 65 Ga.App. 102, 15 S.E.2d 526 (Ga.App.1941). Consequently, we find the Stesneys' first defense without merit.

The Stesneys also contend that the lease between them and the debtors serves to eliminate AMF's rights in the equipment. The lease provides that any property remaining on the premises after the termination of the lease becomes the property of the landlord. In effect, the Stesneys contend that their agreement with the debtors can extinguish the rights of individuals not a party to the agreement. As a general rule, the obligations of contracts are limited to the parties making them. *Horn v. Miller*, 136 Pa. 640, 20 A. 706 (1890). The Stesneys have posited no arguments to exclude the applicability of the rule of *Horn*, *supra*, to the instant case. Since AMF was not a party to the contractual lease between the debtors and the Stesneys, the terms of that lease do not bind AMF or its interests in the bowling equipment. We therefore find the Stesneys' second claim without merit.

Lastly, the Stesneys contend that they are entitled to satisfaction of their claim for back rent against the debtors upon the sale of the bowling equipment. The Stesneys' position is supported by case law which gives a landlord a priority claim in bankruptcy under certain circumstances. *See, e.g., In Re Barnhart*, 4 F.2d 269 (M.D.Pa.

1925). This priority position was available to a landlord because of § 64(a) of the Bankruptcy Act of 1898 (formerly 11 U.S.C. § 104(a)), which incorporated certain priorities given under state law into the federal bankruptcy system. Under Pennsylvania law Pa.Stat.Ann. tit. 39, § 96, afforded rent a priority status. With the passage of the Bankruptcy Act of 1978, the Act of 1898 was repealed and has no effect on cases commencing after September 30, 1979. Pub.L. 95–598, November 6, 1978, 92 Stat. 2549, §§ 401–403. Since the debtors petitioned for bankruptcy in 1981, the new statute governs the disposition of this action. The Stesneys have not indicated any provision of current law which allows incorporation of Pa.Stat.Ann. tit. 39, § 96, into the present bankruptcy distribution system; the Court has likewise been unable to find any authority in current law which supports the Stesneys' claim. We find that the Stesneys have no priority claim and thus their third defense is without merit.

The equipment lease between the debtors and AMF clearly provided that the bowling equipment remained the property of AMF. Since each of the Stesneys' arguments controverting this is meritless, judgment will be entered in favor of AMF. AMF is entitled to immediate possession of the equipment and will also be awarded $9,600.00 in compensation for the Stesneys' use of the equipment.

This opinion constitutes findings of fact and conclusions of law pursuant to Rule 752 of the Bankruptcy Rules.